## INDIANAPOLIS GAS COMPANY v. SHUMACK.

[No. 2,802.   Filed June 28, 1899.   Rehearing denied Oct. 12, 1899.]

MASTER AND SERVANT.—*Personal Injuries.—Employer's Liability Act. —Corporations.*—Plaintiff, while in the employ of defendant gas company, under the direction of the superintendent, went into a trench to repair a leak in the gas-main. The superintendent approached with a lighted lantern and the escaping gas ignited, causing an explosion, injuring plaintiff.   *Held*, that the action of the superintendent in approaching the trench with a lighted lantern was the proximate cause of the injury, and that defendant was liable therefor under the provisions of the employer's liability act, §7083 Burns 1894.   *pp. 88-90.*

SAME.—*Personal Injuries.—Employer's Liability Act.—Corporations.* —In order that there may be a recovery under subdivision two, section one of the employer's liability act, §7083 Burns 1894, it must appear that the person whose negligence caused the injury was in the service of the corporation; that the employe injured was, at the time of the injury, bound to conform to the orders of such person; and that the injured employe, himself without fault, was, when injured, complying with such orders.   *p. 90.*

SAME.—*Employer's Liability Act.—Corporations.*—The second subdivision of the employer's liability act (§7083 Burns 1894), making a corporation liable for injuries to an employe resulting from the negligence of any person in the service of such corporation to whose orders or directions the injured employe at the time of the injury was bound to conform, and did conform, is not nullified by the provision of subdivision four of the same section, limiting the liability of such corporation to instances where the person causing the injury was performing the duty of the corporation in that behalf, since each subdivision specifies different employes.   *pp. 90-93.*

INSTRUCTIONS.—*Must Be Considered as a Whole.*—An instruction will not be considered in detached portions.   *pp. 93, 94.*

VERDICT.—*Interrogatories.—Conflict.*—No presumptions are indulged in favor of special answers to interrogatories, and if such answers control and overthrow the general verdict, they must not only be in conflict with the general verdict, but they must be consistent with each other and free from any obscurity.   *p. 94.*

From the Hamilton Circuit Court.   *Affirmed.*

*T. J. Kane, R. K. Kane* and *T. E. Kane,* for appellant.

*W. R. Fertig* and *H. J. Alexander,* for appellee.

ROBINSON, J.—Appellee recovered a judgment for personal injuries inflicted by an explosion of natural gas, caused by the alleged negligence of appellant while appellee was employed in repairing a gas-main.

The complaint avers that appellee was for some time prior to the accident in appellant's employ at a certain station, and his duties were to regulate the supply of gas as directed from the Indianapolis office, and keep the pressure sheet and register of wells, and report the same to appellant at Indianapolis; that the general superintendent or general foreman for appellant was one Stoner whose orders appellee was bound to obey; that it was determined to repair a dangerous leak in the main near the station where appellee was employed, and that appellee by Stoner's directions procured a number of men to assist in the work, which was to be done at night; that all the men, including appellee, were acting under the orders of Stoner, and all tools, machinery, and appliances were supplied by appellant; that the night was very dark and Stoner had procured ordinary lanterns and negligently allowed the same to be used, when ordinary care required him to procure and use only safety lanterns; that a trench had been prepared which was seven feet deep at the place where appellee was injured, that the gas had been permitted to escape from the line by opening the escape valves; that appellee, pursuant to the order of Stoner, entered the trench and in the dark was feeling with his hands to ascertain if the pipe was parting as desired, and while so engaged and being unable to see the approach of any one on the bank on account of the depth of the trench, Stoner carelessly and negligently approached the same and came to the bank of the trench, carelessly and negligently bearing in his hands an open lighted tubular lantern, while gas in great quantities and volume was escaping at that point, all of which Stoner knew, igniting the gas and causing an explosion which produced the injuries described; that appellee did not know of Stoner's approach and had warned him not to do so.

The jury found in answer to special interrogatories that appellee had been engaged in the business of handling natural gas and the implements and machinery connected with the business, about ten years; and had been in the employ of appellant several years; that he was a skilled man in the business; knew the properties of natural gas and that it would explode if exposed to fire; that he knew the kind of lantern which had been supplied for use in doing the work; that he frequently did work on the lines and wells; that he did not object to doing the work at night; that he engaged the services of part of the laborers to do this work; was directing the workmen in doing the work; that Stoner cautioned appellee and the workmen to be careful and avoid accident; that in the evening before the work was done appellee did not say that it would not be unsafe; that the night was dark and two lanterns were in use; that appellee did not, immediately preceding the explosion jump into the trench, but he was in the trench; that he knew gas was escaping when he went into the trench; that prior to the accident and before beginning the work appellee knew the kind of lanterns that had been provided to give light, by which to do the work; the gas escaped from the end of the pipe where the broken bell was located, which was about fifteen feet from where Stoner was standing at the time of the accident; that appellee, at the time of the accident, was working about twenty-five feet from the end of the pipe where the bell was located; that Stoner was standing about three or four feet from where appellee was working; appellee knew Stoner was standing out in the middle of the road prior to the accident and when appellee was in the trench.

The theory of appellee's complaint, and this theory is adopted by counsel on both sides, is that the cause of the injury was the act of the superintendent, Stoner, in approaching upon the bank of the trench with a lighted lantern and igniting the gas. It is first insisted that the verdict of the jury is contrary to law and is not sustained by sufficient

evidence. No good purpose would be subserved by setting out the evidence. Suffice it to say there is evidence to support the material averments of the complaint, and such being true we can not review the action of the jury. We think it clearly appears from the evidence that the proximate cause of the injury was the act of Stoner in approaching the trench with the lighted lantern.

This case is governed by the second subdivision of §1, Acts 1893, p. 294, §7083 Burns 1894, §5206s Horner 1897, known as the employer's liability act, as follows:  "1. That every railroad or other corporation, except municipal, operating in this State, shall be liable for damages for personal injury suffered by any employe while in its service, the employe so injured being in the exercise of due care and diligence, in the following cases:     *     *     *

"2.   Where such injury resulted from the negligence of any person in the service of such corporation to whose order or direction the injured employe at the time of the injury was bound to conform and did conform."

In order that there may be a recovery under this provision it must appear that the person whose negligence caused the injury was in the service of the corporation; that the employe injured was, at the time of the injury, bound to conform to the orders of such person; and that the injured employe, himself without fault, was, when injured, complying with such orders.

Counsel for appellant argue that this case is governed by the doctrine laid down in *Pierce* v. *Oliver*, 18 Ind. App. 87, upon the question of the liability of a corporation for injuries to an employe caused by the negligence of a fellow servant. But the facts in that case were materially different from the facts in the case at bar; besides in that case the statute in question was not under consideration, and a liability was claimed and exclusively relied upon without reference to the statute.   It was there held that the injured employe and the employe whose negligence caused the injury were fellow

servants. That case was tried without reference to the statute, and upon appeal any right to recover under the statute was disclaimed. Under the statute in question the legislature has fixed a liability provided certain conditions exist, and the liability is placed upon a principle different from the fellow servant rule. In *Louisville, etc., R. Co.* v. *Wagner*, 153 Ind. 420, the court said: "The statute places the case upon a principle different from that in support of the co-servant's rule and the assumption of risk. The test here is threefold: (1) Was the offending servant clothed by the employer with authority to give orders to the injured servant that the latter was bound to obey? (2) Did the injury result to the latter from the negligence of the former while conforming to an order of the former that the injured servant was at the time bound to obey? (3) Was the injured party, at the time of the injury in the exercise of due care and diligence? If these three things concur, appellee exhibits a good cause of action."

In the case of *Hodges* v. *Standard Wheel Co.*, 152 Ind. 680, cited by counsel, Hodges was injured by the negligence of one Huey, whom the regular foreman had temporarily left in charge of the work, and who at the time of the injury was assisting appellant in the work. In that case the court said: "The statute in question certainly intends that where the injury results from the negligence of a person in the service of a corporation that such person must be one who is by it at least expressly or impliedly authorized to give the order or direction and thereby require the employe to obey. If he is not, then, in a legal sense, the employe is not bound to conform to his order. Huey, as we have seen, is shown by the facts not to have been invested with this power or authority by appellee, and consequently was not the person whom the statute contemplated as the one to whose orders appellant was bound to conform."

It is insisted that there is no evidence tending to show that appellee got into the trench when injured in obedience to

any order of the superintendent, Stoner; and that conceding that appellee went into the trench pursuant to Stoner's order, the evidence shows that the injury occurred long after the order had been given and obeyed and as a result of the negligent handling of the lantern by Stoner while acting as a fellow servant.

There is evidence that Stoner was appellant's superintendent and that the work was being done under his direction, and that appellee was at the time subject to his orders; that Stoner had the excavations made, was present all the time up to the time of the accident, and that the work was done as he directed. Appellee had testified that he had been at work in the trench and had come out and walked out to where some men were preparing a pipe to be used; that appellee and Stoner "walked out in the yard; the gas was making some noise, a kind of dull roar; we walked out into the yard, and he says, 'What do you think about that?' I says, 'I don't know so much about it;' he says, 'Do you think we can make it?' I says, 'I don't know, Syl, it is just as you say.' He says, 'Go on ahead, if we get stuck we will quit until to-morrow morning.' I went on ahead over where the boys were working the windlass, went into the ditch and was down at this 12-inch gate, seeing whether it was starting, what it was doing; I told them to raise the pipe up, they did so, told them to let it down, they did that; we shook it around there a little; in the meantime Mr. Stoner had come up close to this hole with the lantern; I did not see him until I raised up to get some air; I warned him, I says, 'Don't come too close with that thing, the wind is blowing your way, it is dangerous.' I again stooped down, when I raised up he says 'How are you making it, Wallace?' I says, 'I think she is doing all right;' we shook the pipe around a little; then in a few minutes I says, 'All right, boys, change your windlass;' I started out of there; Mr. Stoner stepped up too close and ignited the gas."

We think there is evidence to show that appellee when in-

jured was working in obedience to orders of Stoner. We do not understand it to be necessary that the injury should have happened immediately following some order. It is not to be presumed that it was intended that there should be orders from the superintendent concerning all the minor details of the work. There is evidence that appellee went back into the trench and continued the work under Stoner's orders, and that soon thereafter, and while engaged in that work, was injured.

It is further argued that this case is governed by the fourth subdivision of §7083, *supra*, and that there is no liability because the injury was caused by the act of a fellow servant who was not at the time performing any duty of the corporation. But the section is to be construed as a whole. As was said in *Louisville, etc., R. Co.* v. *Wagner*, 153 Ind. 420: "The second subdivision of §1, *supra*, is not nullified by the specification and enumeration contained in subdivision four of said section, as is urged by appellant. Both subdivisions are equally parts of the same section, and relate to the same subject-matter. Each subdivision specifies different employes, but in common they distinguish employes of a superior rank,—employes clothed with responsibility and authority of the employer,—and both must be governed by the same rules of interpretation. The section must be construed as a whole. Black Int. Laws, p. 146."

Upon a careful consideration of the evidence we can but conclude that the jury was authorized in finding that appellee was working where he was in obedience to the orders of Stoner whom he was at the time bound to obey; and that the injury resulted to appellee from the act of Stoner in approaching the trench with the lighted lantern, and that this act of Stoner was the proximate cause of the injury. See *Louisville, etc., R. Co.* v. *Wagner, supra.*

Complaint is made of the twelfth instruction. Taking that instruction as a whole we think it correctly states the law. That portion of the instruction to which appellant

directs its argument, if standing alone, might be open to objection, but the rule is well settled that an instruction is not to be considered in detached portions. The effect of the instruction upon the particular point is that if appellee was injured while working for appellant under the supervision and direction of the superintendent and was injured through the carelessness and negligence of the superintendent, the negligence of such superintendent would be imputed to appellant.

It is insisted that judgment should have been rendered in appellant's favor on the answers to interrogatories notwithstanding the general verdict. It is a well settled rule that no presumptions are indulged in favor of special answers, and that if the answers are to control the case and overthrow the general verdict, they must be not only in conflict with the verdict, but they must be consistent with each other and free from any obscurity. The appellee has the general verdict in his favor, which says that all the material facts in the case have been proved; and, if upon any supposed hypothesis this verdict and the answers can be reconciled, it must stand. *Citizens St. R. Co.* v. *Hoop*, 22 Ind. App. 78, and cases cited.

It can not be said that the answers show that appellee knew Stoner was holding a lantern near where appellee was working. The jury say that appellee knew that Stoner was standing out in the middle of the road, but there is no finding that appellee knew he had come up to the trench and was standing there with the lantern. The answers upon this point are somewhat obscure, but we can indulge no presumption as to what the jury meant. Taking the answers together and construing them as a whole we fail to see anything in them in irreconcilable conflict with the general verdict.

There is no error in the record for which the judgment should be reversed. Judgment affirmed.