## MARION LIGHT AND HEATING COMPANY v. VERMILLION, ADMINISTRATOR.

[No. 6,955. Filed June 29, 1912. Rehearing denied December 19, 1912.]

1. TRIAL.—*Verdict.—Answers to Interrogatories.*—To overcome the general verdict, answers to interrogatories must exhibit facts precluding a recovery notwithstanding every presumption and intendment in favor of the general verdict, and against such answers. p. 680.

2. MASTER AND SERVANT.—*Injury to Servant.—Contributory Negligence.—Answers to Interrogatories.*—In an action against a light company for death of a lineman by coming in contact with a ground wire, which was in contact with a guy wire, forming a connection with a high voltage wire on which decedent was work-

ing, where the complaint proceeded on the theory that decedent was set to work in an unsafe place and showed that the only ground wire attached to the pole on which decedent was working was an abandoned wire and did not extend down to the ground, answers to interrogatories showing that decedent, by order of the foreman, cut off such ground wire below its connection with the guy wire, do not amount to a finding that the wire so severed by decedent extended to the ground so as to show that decedent himself made the place unsafe. pp. 682, 684.

3. TRIAL.—*Verdict.*—A general verdict for plaintiff is a finding that all the material allegations of the complaint are true. p. 684.

4. TRIAL.—*Special Findings.*—*Inferences.*—Inferences in aid of special findings are not allowed. p. 684.

5. MASTER AND SERVANT.—*Injury to Servant.*—*Unsafety of Place of Work.*—*Contributory Negligence.*—*Answers to Interrogatories.* —In an action against a light company for the death of a lineman by coming in contact with a ground wire, which was in contact with a guy wire, forming a connection with a high voltage wire on which decedent was working, where the complaint charged defendant with negligently maintaining a concealed metallic connection between such ground wire and the ground, thereby making the place of work unsafe and dangerous, answers to interrogatories showing that decedent cut off such ground wire below its connection with the guy wire, even on the assumption that such answers show that such ground wire extended down the pole and into the ground, tend to support the conclusion that decedent broke the ground connection for the purpose of making the place safe, rather than the theory that decedent was guilty of contributory negligence in severing such wire. p. 684.

6. MASTER AND SERVANT.—*Duty of Master.*—*Notice of Danger to Servant.*—A servant has a right to rely on the master doing his duty, and that the master will not increase the ordinary hazards of his engagement without his knowledge and without warning him of such dangers. p. 684.

7. MASTER AND SERVANT.—*Injury to Servant.*—*Assumption of Risk.* —*Contributory Negligence.*—*Answers to Interrogatories.*—In an action for the death of a lineman from an electric shock, where the complaint alleged negligence in maintaining a concealed metallic connection between the ground and an abandoned ground wire attached to one of defendant's poles, answers to interrogatories showing that decedent ascended the pole for the purpose of placing a cross-arm and, while on the pole, was ordered to retape one of defendant's high tension wires, which he proceeded to do without wearing rubber gloves supplied by defendant, whereby he was shocked and killed, are not in conflict with a general verdict for plaintiff on the ground that such negligence on the part of

decedent in failing to wear rubber gloves is shown as to preclude recovery on the ground of assumed risk, in the absence of an answer showing that, without the secret ground connection, there was danger in thus doing the work. pp. 685, 686.

8. MASTER AND SERVANT.—*Assumption of Risk.*—A servant assumes the risks naturally incident to the service for which he is employed, and those known to him or which may be discovered in the exercise of ordinary care. p. 685.

9. MASTER AND SERVANT.—*Contributory Negligence.*—*Care Required of Servant.*—It is the duty of an employe to use care commensurate with the obvious danger incident to his employment, and the master is not liable to the employe for such injury as results from the latter's failure to observe the danger which ordinary diligence would discover. p. 686.

10. MASTER AND SERVANT.—*Assumption of Risk.*—*Latent Dangers.* —An employe does not assume the increased hazards of the master's negligence in failing to warn him of latent dangers which are unknown to him and known to the master. p. 686.

11. APPEAL. — *Review.* — *Verdict.* — *Answers to Interrogatories.*— Where the answers to interrogatories are reconcilable to a state of facts provable under the issues, they are not in irreconcilable conflict with the general verdict. p. 686.

12. APPEAL.—*Rehearing.*—*Additional Petitions.*—*Propriety.*—There is no statute, rule of practice, or rule of court authorizing the same party in the same case to file more than one petition for a rehearing. p. 687.

13. APPEAL. — *Decisions.* — *Modification.* — *Power of Court.*—The court has the right, as long as it has jurisdiction of a case appealed to it, on its own motion, or at the suggestion of either or both parties, to change or modify its reasons supporting its conclusion, or reverse its conclusion entirely. p. 688.

14. APPEAL.—*Rehearing.*—*Grounds.*—A wrong reason for a right decision affords no ground for a rehearing, where the decision can be placed on the proper ground. p. 688.

15. APPEAL.—*Substituted Opinion.*—*Effect.*—The filing of a substituted opinion by the court in a case appealed to it, wherein the ultimate rights of the parties as determined in the original opinion remain unchanged, does not have the effect of granting a rehearing or reopening of the case. p. 688.

From Grant Circuit Court; *H. J. Paulus,* Judge.

Action by Davis Vermillion, administrator of the estate of Walter Fleming, deceased, against the Marion Light and Heating Company and others. From a judgment for plain-

tiff against the Marion Light and Heating Company only, said defendant appeals. *Affirmed.*

*. W. H. Carroll, G. A. Henry* and *A. C. Harris,* for appellant.

*Jesse C. Shuman, H. M. Elliott* and *Luther E. Pence,* for appellee.

MYERS, J.—Appellee brought this action against the Marion Light and Heating Company, appellant, the Central Union Telephone Company, and the United Telephone Company, to recover damages on account of the death of his decedent, caused by the alleged negligence of appellant and its codefendants. Issues were formed and submitted to a jury for trial, resulting in a verdict in favor of plaintiff, and against defendant, Marion Light and Heating Company, and in favor of the Central Union Telephone Company and the United Telephone Company. The jury with its general verdict returned answers to sixty-seven interrogatories. Defendant Marion Light and Heating Company appealed to this court from the judgment rendered against it, assigning as error the overruling of its motion for judgment in its favor on the answers of the jury to the interrogatories, notwithstanding the general verdict.

1. In order to sustain this appeal, the answers of the jury must exhibit facts precluding appellee's recovery notwithstanding every presumption and intendment in favor of the general verdict, and against such answers. *Wright* v. *Chicago, etc., R. Co.* (1903), 160 Ind. 583, 66 N. E. 454; *Chicago, etc., R. Co.* v. *Leachman* (1903), 161 Ind. 512, 69 N. E. 253; *Princeton Coal, etc., Co.* v. *Roll* (1904), 162 Ind. 115, 66 N. E. 169; *Smith* v. *Michigan Cent. R. Co.* (1905), 35 Ind. App. 188, 73 N. E. 928.

The complaint is exceedingly long, and we will attempt to refer only to such facts therein as will tend to indicate the questions for decision. The complaint shows that defendant, Marion Light and Heating Company, at the time

of the accident in question, was engaged at the city of
Marion in producing and generating electric currents and
furnishing the same to its customers for light, heat and
power purposes, and that its codefendants were conducting
a general telephone business in the same city. Said defend-
ant and its codefendants, in conducting their respective
businesses, each operated and controlled a system of wires,
supported by poles situated along and upon Railroad ave-
nue, one of the public streets of said city, and under a
joint arrangement a certain pole on said avenue was used
by each of them for maintaining and operating its system
of wires, each company having the right to go upon said
pole, and repair, adjust and change its wires and appli-
ances thereon; and for that purpose, or in the control of
said wires, the employes and servants of the respective com-
panies would frequently climb said pole. On August 27,
1906, the day of the accident, there was attached to said
pole a double steel or copper wire extending from said tele-
phone wire downward to within about six feet of the earth,
and formerly used as a "ground wire." The use of this
wire had been abandoned for years, and there was no ap-
parent indication to employes and others having business
on said pole that it had any ground connection. There was
no other wire or conductor of electricity leading down said
pole. About eleven feet above the ground a cable or guy-
wire was looped around said pole in such a way that it came
in contact with that portion of said ground wire connected
with the wires of the telephone company, and otherwise so
constructed that it connected with another guy-wire lead-
ing to the ground from another pole, thereby furnishing a
ground connection for said abandoned wire at a point 100
feet distant from the first pole; that the connections thus
made, forming a ground or metallic circuit with the earth,
were so hidden that they were not open to ordinary ob-
servation; that decedent had no notice or knowledge of the
dangerous condition of said pole and wire by reason of their

connections, nor was the same discoverable by the exercise of ordinary care, and appellant had full knowledge thereof; that on the day and at the time of the accident, appellee's decedent was, and for about three weeks prior thereto had been in the employ of appellant as a lineman; that immediately prior to the accident, appellant, knowing the dangerous condition of said wire connection aforesaid, negligently and carelessly ordered, directed and required decedent to go on said pole for the purpose of repairing and adjusting its wires, and carelessly and negligently failed to give him any warning or notice whatever of said defects, conditions or danger; that said decedent, in obedience to said orders, and in the performance of his work, by the aid. of what is known as "climbers," constructed out of steel or iron, ascended said pole, and began the work of taping or repairing appellee's wires supported by said pole, and carrying a high and dangerous voltage of electricity; that while thus engaged, one of said climbers, which was strapped to his leg and foot, came in contact with said abandoned ground wire, which, in connection with said guy-wires formed a circuit, whereby he received from appellant's wires a voltage of electricity, which passed through his body causing his death.

Appellant insists that the complaint proceeds on the sole theory that decedent was set to work by appellant in an unsafe place, and that the answers of the jury to 2. interrogatories show that the place was made unsafe by decedent himself. In support of this contention we are referred to certain interrogatories and answers thereto, which read as follows: " (65) Was said ground wire cut off below its connection with said guy wire on said first mentioned pole prior to the date of the decedent's death? A.—No. (66) Who cut off said ground wire below said guy wire? A.—Decedent, by order of foreman. (67) How long had said ground wire been cut off below said guy wire before the decedent received his injury? A.—Within an

hour.'' From other answers it appears that for five years decedent had been engaged in placing cross-arms on poles, erecting and repairing electric wires, and was an experienced wire lineman; that he knew the danger of handling and working with high-tension electric wires, and was at the time of the accident in the full possession of all his faculties; that immediately preceding the accident, at the request of his foreman, he ascended the pole supporting telephone wires and the high-tension wires of appellant, for the purpose of fastening a cross-arm thereon. Fastened to this pole was a cable box about twenty or twenty-five feet above the ground. To the south of this pole, about thirty-three feet, was located a second pole, and about fifty feet to the west or northwest of the second pole was a third pole, known as a ''stub pole''. To the first pole, and about eleven feet above the ground, was fastened a guy-wire, extending to the top of the second pole, and in connection with another guy-wire to the stub pole, and thence into the ground. The ground wire consisted of three copper wires wrapped together and stapled to the first pole, extending downward from said cable box to a point about ten or eleven feet above the ground, and said guy-wire was so fastened to said first pole as to form a contact with said ground wire; that decedent, before attempting to attach said cross-arm, cut said ground wire below the cable box, and turned the same out of his way; that while he was working on said pole, attaching the cross-arm, he was ordered by his foreman to repair the insulation on one of appellant's high-tension wires, by wrapping tape around it. While attempting to make the repair in the manner stated, with his bare hands, one of the steel or iron spears or climbers, strapped on his shoe, came in contact with the ground wire on said pole, and immediately an electric current passed through his body, causing his death.

The general verdict amounts to a finding that all the material allegations of the complaint are true. There is no

claim of more than one so-called ground wire attached to the pole on which decedent was working at the time of the accident. The complaint shows that this wire did not extend down the pole to the ground, and that it was an abandoned wire, and these facts must be taken as true, unless the answers of the jury are in irreconcilable conflict therewith. The answers show that decedent, by order of the foreman, cut off "said ground wire" below its connection with the guy-wire. But these facts, unaided by inferences, do not amount to a finding that the wire so severed by decedent at that time extended to the ground, and inferences in aid of such special findings are not allowed. *Flutter* v. *New York, etc., R. Co.* (1901), 27 Ind. App. 511, 59 N. E. 337; *Morford* v. *Chicago, etc., R. Co.* (1902), 158 Ind. 494, 63 N. E. 857; *Indianapolis Gas Co.* v. *Shumack* (1899), 23 Ind. App. 87, 54 N. E. 414.

The contention of appellant cannot be sustained for another reason. It will be observed that the complaint charges appellant with negligently maintaining a hidden and concealed metallic connection between said ground wire and the ground, thereby making the place where decedent was ordered to work unsafe and dangerous. It appears that this condition was known to appellant, and unknown to decedent, and that he could not have known it by the exercise of ordinary care. The answers fail to negative either of these facts as to knowledge, but, on the contrary, tend to support the general verdict in that particular. Decedent had a right to rely on the master doing its duty. He had no reason to expect that the master would increase the ordinary hazards of his engagement without his knowledge, and then fail to warn him of such dangers. If we assume, as appellant contends, that the ground wire extended down the pole and into the ground, and that it was severed, and the ground connection

therewith broken by decedent, and that the jury so found, these facts, as they appear to us, would tend to support the conclusion that the ground connection was broken for the purpose of making the place safe rather than unsafe, and ought to have no controlling influence when it certainly appears that the cutting of the wire had nothing whatever to do with causing the accident.

Appellant also insists that the facts disclosed by the answers to the interrogatories show such a heedless indifference by decedent of the apparent danger, as to preclude a recovery on the ground of assumed risk. This contention is based on additional answers of the jury, to the effect that among the accessories, tools and equipment furnished by appellant for use by decedent and the crew of linemen with whom he was working on the day of his death were rubber gloves, which were nonconductors of electricity, and by decedent known to be such, as well as their purpose and use, and that he knew it was dangerous to handle high-tension wires "under certain conditions" without wearing them; that his failure to wear such gloves while attempting to repair the insulation on appellant's wires "contributed proximately to the cause of his death."

It is clear from these answers that "under certain conditions" it is dangerous to handle wires highly charged with electricity without wearing rubber gloves, but it is not shown whether these conditions were present and known to decedent, or could have been known to him by the exercise of ordinary care at the time he undertook to tape the wire. The decedent by his contract of employment assumed the risks naturally incident to the service for which he was employed, and those known to him or which he should discover in the exercise of ordinary care. As said in the case of *Salem Stone, etc., Co.* v. *Griffin* (1894), 139 Ind. 141, 148, 38 N. E. 411: "Those dangers which are unknown to the servant, and not dis-

coverable by him with ordinary care, but which are, or by ordinary care of the master should be, known to him, are not assumed.''

The answers show that decedent went up the pole for the purpose of placing thereon a cross-arm. It does not appear that this work was hazardous, or that his

7. original purpose on the pole was to handle the high-tension wires. The order to perform this service came later, but while he was still on the pole, and it was while he was so engaged in this latter service that the accident happened. He was twenty-five feet from the ground, and from all appearances observable to him there was no danger in taping the wire in the manner he was doing it. The only danger, in fact, was the secret contact of wires unknown to him, and known to the master. There is no answer showing that in the absence of the secret and concealed ground connection there was any danger in doing the work without wearing rubber gloves.

While the law makes it the duty of the employe

9. for his own safety to use care commensurate with the obvious danger incident to his employment, and will exonerate the master in case the employe is in-

10. jured through his failure to observe the danger which ordinary diligence would discover, yet he does not assume the increased risks and hazards of the master's negligence in failing to warn him of latent dangers known to the master and unknown to the servant.

From these considerations, we think it possible to reconcile the answers of the jury to a state of facts provable under the issues in this cause, and if so, the answers

11. are not in irreconcilable conflict with the general verdict. *Wright* v. *Chicago, etc., R. Co., supra; City of South Bend* v. *Turner* (1901), 156 Ind. 418, 60 N. E. 271, 54 L. R. A. 396, 83 Am. St. 200. Appellant's motion for judgment was therefore properly overruled.

Judgment affirmed.

## SECOND PETITION FOR REHEARING.

MYERS, J.—On May 10, 1911, an opinion by this court was filed in this case affirming the judgment of the court below, and judgment was accordingly entered. On July 5, 1911, appellant petitioned the court for a rehearing. On June 29, 1912, the opinion of May 10 was withdrawn, and another opinion substituted, and the petition for a rehearing then overruled. The result reached in the original opinion was adhered to in the opinion substituted, and the same instructions to the lower court were reaffirmed. At the expiration of thirty days after June 29, the clerk of this court certified to the Grant Circuit Court the decision and instructions of this court. On August 23, 1912, appellant filed a second petition for a rehearing addressed to the substituted opinion, and which appellant designates as the opinion of June 29. Appellant also petitions this court for an order directing its clerk to recall said certified copy as being prematurely and erroneously issued, and in violation of law. §§704, 1418 Burns 1908, §662 R. S. 1881, Acts 1891 p. 39, §14.

When this court, on May 10, gave its opinion and rendered judgment affirming the judgment of the lower court, the case was determined within the meaning of the statute, §704, *supra*. Appellant, within sixty days thereafter, took advantage of its right so to do, and filed a petition for a rehearing. That petition was overruled.

There is no statute, rule of practice, or rule of court authorizing the same party in the same case to file more than one petition for a rehearing. Elliott, App. Proc. 12. §558; *City of Crawfordsville* v. *Johnson* (1875), 51 Ind. 397; *Garrick* v. *Chamberlain* (1881), 100 Ill. 476; *Smith* v. *Dennison* (1882), 101 Ill. 657. "The object of a petition for rehearing is to point out mistakes of law or of fact, or both, which it is claimed the court has made in reaching its conclusion." *People, ex rel.,* v. *District Court, etc.*

(1899), 26 Colo. 386, 391, 58 Pac. 604, 46 L. R. A. 850. In this case such a petition was presented, and it may be said that the court, on a reconsideration of the questions thus presented and theretofore considered, in some respects gave different or additional reasons for reaffirming its conclusion. But there is no claim that any new or different principle of law was announced in the substituted opinion from that declared in the one withdrawn, nor that the rights of the parties thus determined were in any manner changed.

13. It must be conceded that as long as the court had jurisdiction of the case, it had the right, on its own motion or at the suggestion of either or both parties, to change or modify its reasons supporting its conclusion, or reverse its conclusion entirely. In this case the reasons only were changed, "but a wrong reason for a right decision can be no ground for a rehearing, where the decision can be placed upon the proper ground." *Wilson* v. *Vance* (1877), 55 Ind. 584.

The present petition for a rehearing asks the same relief as did the first, and proceeds on the theory that the case was not determined within the meaning of §704, *supra*, until June 29. If the filing of the substituted opinion had the effect of granting a rehearing, or to reopen the case, then there would be good reason for appellant's contention, but it did not have that effect. The ultimate rights of the parties as determined on May 10 remained unchanged. Hence we conclude that the overruling of the first petition for a rehearing exhausted appellant's remedies in this court, and the filing of the present petition was without warrant of law. This conclusion sustains the action of the clerk of this court in certifying the decision and instructions of this court to the Grant Circuit Court as upon a final determination of the cause.

It is therefore ordered that the petition for a rehearing now pending be stricken from the files, also that the petition for an order directing the clerk to recall the decision

and instructions of this court certified to the Grant Circuit Court be, and the same is hereby overruled.

NOTE.—Reported in 99 N. E. 55, 100 N. E. 100. See, also, under (1, 11) 38 Cyc. 1927; (2, 5) 38 Cyc. 1930; (3) 38 Cyc. 1869; (4) 38 Cyc. 1919; (6) 26 Cyc. 1182; (7) 26 Cyc. 1513; (8) 26 Cyc. 1177; (9) 26 Cyc. 1231; (10) 26 Cyc. 1213; (12) 3 Cyc. 218; (13) 3 Cyc. 212, 474; (14) 3 Cyc. 213. As to the doctrine of assumption of risk and contributory negligence in the law of master and servant, see note to *Brazil Block Coal Co.* v. *Gibson* (Ind.), 98 Am. St. 289; 97 Am. St. 884. As to the duties and liabilities of an electric corporation, see 100 Am. St. 515. As to the applicability of the doctrine of assumption of risk to a lineman, see 15 Ann. Cas. 598; Ann. Cas. 1912 B 467. Liability of electric company to employe injured by electric shock, including question of assumption of risk, see 32 L. R. A. 351. May servant assume risk of dangers created by the master's negligence, see 4 L. R. A. (N. S.) 848; 28 L. R. A. (N. S.) 1215. Servant's assumption of risk from latent danger or defect, see 17 L. R. A. (N. S.) 76.