INDIANA MANUFACTURING COMPANY v. BUSKIRK.

[No. 4,463.   Filed November 20, 1903.   Rehearing denied January 27, 1904.   Transfer denied February 5, 1904.]

MASTER AND SERVANT.—*Personal Injuries.*—*Employers' Liability Act.*— *Complaint.*—A complaint for personal injuries alleged that plaintiff was in the employ of defendant as a fireman under the direction and control of defendant's chief engineer, and, while engaged in the performance of his duties to defendant, and in pursuance of the orders and directions of the chief engineer, by reason of the fault and negligence of defendant, was injured as therein described, states a cause of action under the second clause of §7083 Burns 1901.   *pp. 415, 416.*

SAME.—*Employers' Liability Act.*—To entitle a servant to recover under clause two of §7083 Burns 1901 it must be made to appear that the servant was acting under some special order or direction of the person to whose order he was bound to conform when injured.   It is not enough to show that he was performing his general duties.   *pp. 416–422.*

From Miami Circuit Court; *J. T. Cox,* Judge.

Action by William Buskirk against the Indiana Manufacturing Company.   From a judgment for plaintiff, defendant appeals.   *Reversed.*

*R. J. Loveland, H. P. Loveland, J. C. Blacklidge, C. C. Shirley* and *Conrad Wolf,* for appellant.
*W. E. Mowbray,* for appellee.

ROBINSON, C. J.—Suit by appellee for personal injuries.   A demurrer to the complaint was overruled, and the case was tried upon issue formed by the complaint and answer in denial, resulting in a verdict and judgment for appellee.   Overruling the demurrer and appellant's motions for a new trial and for judgment on the answer to interrogatories are assigned as errors.

The complaint avers that one Williamson was in appellant's employ as chief of engineers in the engine room, having charge and control of the room and all persons and

Indiana Mfg. Co. *v.* Buskirk.

things therein; that appellee was employed as fireman, and at certain times as subordinate engineer, "and as such fireman and subordinate engineer to conform, and did in fact conform to the orders, direction, and control" of Williamson "in the performance of all his duties pertaining to his said employment," that during all the time of his employment appellee was under the authority of Williamson, and "subject to his orders and directions in all matters pertaining to his said employment in and about said engine room;" that, on a date named, appellee, while engaged in the performance of his duties to appellant, and under and in pursuance of the orders and directions and under the control of Williamson, by reason of the fault and negligence of appellant, was injured in the following manner: One Koontz, in appellant's employ, had entered the engine room, and had stood on edge in the engine room a heavy iron plate, and had propped the same so as to be safe if left undisturbed; that a few minutes thereafter Williamson, without any notice or warning to appellee, "wilfully, purposely, and negligently kicked said prop from under said iron plate," causing the same to fall on appellee's foot; that at the time appellee was injured "he was engaged in the discharge of his usual duties as fireman and subordinate engineer for said defendant company in and about said engine room, under the control and acting under and in pursuance of the direction of" Williamson, who gave no warning that he was about to kick the prop from under the plate, nor did appellee know of the danger to which he was exposed until the plate fell; that the injury was caused wholly through the negligence of appellant acting through Williamson, as aforesaid, and would not have occurred but for his wrongful and negligent act.

The complaint should be construed as one asking for relief under the second clause of the employers' liability act of 1893 (Acts 1893, p. 294, §7083 Burns 1901),

From the language used in the pleading it was manifestly based upon that act. It is argued against the sufficiency of the complaint that it fails to charge the giving of any specific direction by Williamson and its execution by appellee at the time he was injured. It appears from the pleading, however, that appellee was bound to conform and did conform to the orders of Williamson "in the performance of all his duties pertaining to his said employment," and that when injured he was in the discharge of the duties of his employment. While a motion to that effect would have required appellee to make his complaint more specific in this particular, yet we think the averment sufficient to admit proof of any particular order to which he was conforming at the time he was injured. The effect of the averment is that he was injured while in the discharge of the duties of his employment, and that he performed no duties pertaining to his employment except upon the orders of Williamson, and to these orders he was bound to and did conform. We think the complaint sufficient against a demurrer.

The jury answered interrogatories, that appellee had been in the employ of the appellant as night fireman for five months; that Williamson, who was chief of engineers, was in charge of the engine as engineer, and worked on the day turn except when the machinery ran until 9 o'clock at night, and his duties required him to attend to the engine during the daytime except when the machinery ran until 9 o'clock at night; appellee had charge of the engine on the night turn, except when machinery was running; appellee received $1.86 per night, and Williamson $60 or $65 per month; the injury occurred in the boiler room, the place appellee usually worked when on duty; in maintaining the fires under the boilers it was the practice of the appellee to stand in front of the same while feeding coal into the furnaces; iron plates about four feet long and two

and a half feet wide formed a part of the floor of the boiler room immediately in front of the boilers, and fit into openings in the floor, and were held down by their own weight; these plates covered certain water-pipes used for feeding water to the boilers, and when the pipes were out of repair it was necessary to raise the plates to repair the same; the plate causing the injury had been raised by Michael Koontz, a pipe fitter in appellant's employ, to repair the pipes under the same; the plate had been lifted out if its position at its outer edge, and raised about eighteen inches, so as to rest on the inner edge and a prop under the outer edge, from three to five minutes before the injury; Koontz asked and received permission from appellee to raise the plate, appellee assisted in raising it, and the prop was placed under by appellee. When the plate was raised it stood eight or ten inches from the front end of the boiler nearest thereto, and was in plain view of appellee when in the discharge of his duties at the time of his injury; it was appellee's duty to observe the steam-gauge on the boiler he was tending for the purpose of ascertaining when to supply the furnaces with coal; immediately before his injury appellee observed that the gauge indicated the necessity for more coal, and upon observing such indication he proceeded to put coal into the furnace in front of which the iron plate stood; appellee was caused to replenish the fire at the time of his injury by the indications of the steam-gauge; Williamson was not in the boiler room when the plate was raised, had said nothing to appellee about putting coal in the furnace after the plate was raised, and had given appellee no instructions about putting coal in the furnace, or where he should stand while performing his duties on the day of his injury, nor had any officer or agent of appellant given appellee any such instructions; no one gave to appellee on the day he was injured any instructions with reference to feeding coal into the furnaces;

the injury was caused by Williamson, immediately after coming into the boiler room, kicking the prop from under the plate, causing it to fall on appellee's foot; the plate was firmly and safely propped if the prop had not been so removed by Williamson, and would not have fallen, and appellee's injury would not have occurred, had he not knocked the prop from under it; Williamson acted upon the suggestion of no one in removing the prop, and first learned the plate had been raised when he came into the boiler room immediately before he removed the prop, and had no knowledge that the plate was to be raised.

The case made by the pleading and the evidence is not a liability for an injury resulting from appellant's negligence in the selection of a careless and incompetent fellow servant, nor from appellant's negligent failure to provide a safe working place. Even if it should be conceded that Williamson was a vice-principal charged with the duty of keeping the working place in a safe condition, it appears from the record that the unsafe condition was created by appellee himself, in conjunction with the pipe fitter, and without the knowledge or through the agency of Williamson. The case made by the record is that of negligence of a fellow servant, and it was for the purpose of creating a liability against a corporation for the negligence of a fellow servant that the act of 1893 was enacted. It had long been the rule that an injured employe could not recover damages for an injury received through the negligence of a fellow servant. No legislation was needed to give a right of action for an injury caused through the negligence of a vice-principal. Section 7083 Burns 1901 provides that a railroad or other corporation, except municipal, shall be liable for injuries suffered by an employe, himself without fault: "(2) Where such injury resulted from the negligence of any person in the service of such corporation, to whose order or direction the injured em-

ploye at the time of the injury was bound to conform, and did conform."

It seems from the facts specially found by the jury that appellee has failed to bring himself within the meaning of the above statute. The order or direction here referred to means something more than general instructions as to the duties of the employe. This court has held in a recent case that it must be made to appear that the employe was acting under some special order or direction of the person to whose order he was bound to conform when injured, and that it is not enough to show that he was performing his general duties. *Grand Rapids, etc., R. Co.* v. *Pettit,* 27 Ind. App. 120.

It may be that appellee had general instructions as to his duties and that these instructions were given him by Williamson, and that he was at all times subject to the authority of Williamson; but this would not make his position different from that of every employe of a corporation-engaged in the line of his duty. *Mobile, etc., R. Co.* v. *George,* 94 Ala. 199, 10 South. 145. Whether Williamson was a superintendent or vice-principal or was an employe of the company of no higher rank than appellee may have nothing to do with liability under this subdivision of the statute. The question is not what position Williamson occupied in the factory. The question is, was he a person to whose order or direction, at the time of the injury, appellee was bound to conform? If he was, and by reason of Williamson's negligence appellee was injured while conforming to such order or direction, the statute is satisfied. *Dolan* v. *Anderson,* 12 Rettie 804; Beven, Employers' Liability (2d ed.), 152.

The matter of superior rank would go to the question of the injured employe's duty to obey the order when given, as he would probably be bound to obey any order given him by such superior if the order or direction was one which

reasonably came within the scope of such authority. But the question is, were the relative positions of the parties such in fact "that one owed obedience to the other, and that the order was such as could not have been declined without contumacy?" *M'Manus* v. *Hay*, 19 Scot. L. R. 345, 9 Rettie 425; *Postal Tel. Cable Co.* v. *Hulsey*, 115 Ala. 193, 22 South. 854. See *Fenwick* v. *Illinois Cent. R. Co.*, 100 Fed. 247, 40 C. C. A. 369.

It is true an order or direction may be implied from circumstances. Thus, where a railway company employed a boy to assist one of their carmen in unloading from a van large iron frames, the frames were placed upright, and secured at each end by a string to the hoops of the van. The carman untied the string at one end, and the boy, without any express orders, but in the usual course, untied the string at the other end. The carman then drew away one of the frames, causing the injury; it was held the boy could recover under the statute. *Millward* v. *Midland R. Co.*, L. R. 14 Q. B. D. 68. See, also, *Mobile, etc., R. Co.* v. *George, supra; Dolan* v. *Anderson, supra; Hatfield* v. *Enthoven*, 72 Law T. 157; Dresser, Employers' Liability, §66.

In *Louisville, etc., R. Co.* v. *Wagner*, 153 Ind. 420, it is held that three things must concur to give a right of action under this statute. "(1) Was the offending servant clothed by the employer with authority to give orders to the injured servant that the latter was bound to obey? (2) Did the injury result to the latter from the negligence of the former while conforming to an order of the former that the injured servant was, at the time, bound to obey? (3) Was the injured party at the time of the injury in the exercise of due care and diligence?" See, also, Beven, Employers' Liability (2d ed.), 153-157; Ruegg, Employers' Liability (5th ed.), 98-107; Dresser, Employers' Liability, §§64, 66, 67; *Wild* v. *Waygood*, (1892) 1 Q. B.

783, 8 Times L. R. 15, 61 L. J. Q. B. 391; *Snowden* v. *Baynes,* L. R. 24 Q. B. D. 568, 59 L. J. Q. B. 325; *Thacker* v. *Chicago, etc., R. Co.,* 159 Ind. 82; *Terre Haute, etc., R. Co.* v. *Rittenhouse,* 28 Ind. App. 633.

Counsel for appellee cites the case of *Indianapolis Gas Co.* v. *Shumack,* 23 Ind. App. 87. It was there held that it was not necessary that the injury should have happened immediately following some order, and that it is not to be presumed that it was intended that there should be orders from the superior concerning all the minor details of the work. The facts in that case are very different from the case at bar, and it is there held that the record showed that Shumack went back into the trench and continued the work under the orders of the superintendent, and that soon thereafter, and while engaged in that particular work, was injured. The facts in that case are quite different from facts showing an employe engaged in the line of his duty under general instructions as to what those duties are.

In the case at bar appellee testified that he was employed by Williamson as fireman to work for appellant, and that Williamson put him to work in the room firing; that he gave appellee no particular orders in connection with the work; that he gave "no particular orders, only, of course, I had to attend to keeping up the steam;" did not tell appellee anything about what degree of steam to keep up,—said nothing about that; that he directed appellee "to keep up steam and fire, and to take care of things around there generally." Appellee further testified that he had had about twenty-five years experience firing, which Williamson knew; that Williamson just told him to keep up steam, which he did by shoveling coal into the firebox and keeping it hot, and when injured he was shoveling coal into the fire-box. On cross-examination he testified that the steam-gauge on the boiler governed him in

putting in coal; that he did not have to be told, and was not told, by Williamson, when to put coal in; that Williamson had instructed him to "keep up steam, keep the dry-houses hot, and keep the building the right temperature, and get things ready for the next morning to start the engine;" that he gave appellee these instructions about every evening, but on the evening of the injury he had no talk with him about it. In the case at bar it is found that neither Williamson nor any other agent or officer of appellant had given appellee any instructions concerning the particular duty on the day of the injury. The findings not only show that Williamson had given appellee no order, but that appellee, when injured, was engaged in putting coal into the furnace because the steam-gauge indicated that it was required.

In considering this clause of the Alabama statute—the same as ours—the court, in *Mobile, etc., R. Co.* v. *George, supra,* said: "The clause under which these counts are framed evidently refers to special orders or directions, in respect to the particular service in which the employe is engaged at the time of the injury, as distinguished from a general order or direction in reference to the discharge of his general service, growing out of the nature and scope of his employment."

Moreover, in the case at bar, if it could be held that appellee, when injured, was obeying some order or direction previously given by Williamson, it is expressly found that appellee assisted in creating a changed and dangerous condition in his working place without the knowledge of Williamson, and that no order or direction was given appellee to go into this particular place in its then condition and perform any work.

Judgment reversed, with instructions to sustain appellant's motion for judgment on the answers to interrogatories.