## TOLEDO, ST. LOUIS & WESTERN RAILROAD COMPANY v. PAVEY.

[No. 5,845.   Filed December 21, 1906.]

1. MASTER AND SERVANT. — *Negligence.* — *Employers' Liability Act.—Foreman.—Orders.*—A railroad company is liable under subd. 2, §7083 Burns 1901, Acts 1893, p. 294, §1, to a servant injured by the negligence of its foreman who had ordered him to assist in taking down scaffolding around a bridge pier, and who, while performing such order, was injured by reason of such foreman's negligently pulling down a timber which struck the crosspiece on which plaintiff was standing, thereby causing plaintiff to fall and sustain injuries, the specific method of work being prescribed by such foreman.   p. 285.

2. SAME.—*Negligence.—Employers' Liability Act.—Foreman.—Vice-Principal.*—An action by a servant against a railroad company, under subd. 2, §7083 Burns 1901, Acts 1893, p. 294, §1, for the negligence of a superintendent whose orders plaintiff was required to obey, does not involve the question of the duty of a vice-principal.   p. 287.

3. SAME.—*Employers' Liability Act.—Foreman.—Negligence.—Question for Jury.*—Whether a foreman is guilty of negligence, under subd. 2, §7083 Burns 1901, Acts 1893, p. 294, §1, is a question of fact for the jury.   pp. 287, 288.

4. SAME.—*Employers' Liability Act.—Negligence.—Foreman.—Moving Truck.*—Where a foreman ordered the servant to assist in moving a loaded truck, and such foreman's negligence, in temporarily assisting therein, caused the plaintiff injury, the master is liable under the employers' liability act (subd. 2, §7083 Burns 1901; Acts 1893, p. 294, §1).   p. 287.

5. APPEAL.—*Same Questions Differently Presented.*—Where the same questions are raised on the motion for a new trial and on instructions, a decision on such motion suffices for both.   p. 289.

6. DAMAGES.—*Excessive.*—Where it does not appear that the jurors acted with prejudice, partiality or corruption, the damages awarded will not be held excessive.   p. 289.

From Parke Circuit Court; *Gould S. Rheuby,* Judge.

Action by William C. Pavey against the Toledo, St. Louis & Western Railroad Company.   From a judgment for plaintiff, defendant appeals.   *Affirmed.*

*Guenther & Clark, Clarence Brown* and *Charles A. Schmettau,* for appellant.

*Puett & McFadden,* for appellee.

ROBY, J.—Action by appellee. His amended complaint was in two paragraphs, to each of which a demurrer for want of facts was overruled, proper exceptions reserved, and a general denial filed. Verdict for $3,500. Motions for a new trial and in arrest of judgment were overruled, and judgment was rendered upon the verdict.

Counsel have addressed their argument primarily to the assignment that the court erred in overruling appellant's motion for a new trial, for the reason that the verdict is not sustained by sufficient evidence and is contrary to law. The theory of appellee's complaint was that he had been damaged through an injury received by him because of the negligence of a person in the service of the appellant corporation, to whose order he was bound to and did at the time conform. In a most admirable argument appellant's counsel contend that the evidence is insufficient to support the verdict for the following reasons: "(a) The appellee at the time of the accident was not conforming to such an order as is contemplated by the terms of the statute. (b) The injury did not result from the negligence of the foreman in the performance of any duty owing to the appellee by the appellant. (c) The injury complained of resulted from a mere accident."

The evidence did establish the following facts: On November 9, 1903, appellee was working for the Toledo, St. Louis & Western Railroad Company. He was employed by L. H. Harman, who employed other laborers, gave instructions, directed the laborers to do the work, and was superintending the construction of the work. The work upon which he was employed was connected with putting in piers and abutments for a new bridge across Coal creek. The mould for one of said piers was constructed of boards, held in place by three braces

or crosspieces running around the pier. The crosspieces were about ten inches wide, the first one eight feet from the ground and the next one eight feet higher. On said day Harman directed appellee to tear the sheeting from around said pier, gave him an old axe to knock it off with, and said: "We will have to go from one of these 3x10 braces to the other, knock from one to the other." Plaintiff testified: "I followed the directions. It was my duty to do that. In doing this work I was standing on the first 3x10 piece, which was eight feet ten inches from the base of the concrete. We would knock the sheeting loose and let it drop down, and other men would take it out. The piece that knocked me down was hanging, and the men wanted me to get it down. It was the second crosspiece at the north end of the pier. I had got some of these cross-pieces down and was getting that one down. It was fastened with a couple of bridge spikes. I caught hold of it, and was working it backwards and forwards to get it loose. As I was working it, I felt something jar it, and I looked down and saw that Mr. Harman had hold of it with a timber bar and was pulling it back. I then got away from it and walked back some distance. The cross-piece, in falling, struck the one I was on and knocked that loose and let me fall. In falling I struck the base of the pier and received injuries." There was no controversy but that Harman was a person in the service of said corporation, to whose order and direction appellee, at the time of the injury, was bound to conform. §7083 Burns 1901, subd. 2, Acts 1893, p. 294, §1. The evidence shows that the work in which appellee was engaged at the time of his injury was being done in accordance with specific directions received from Harman, not only as to the particular work then to be done, but the manner of doing it, including the position to be occupied by him. Harman, after giving such directions, did not at once go with appellee, but later went where appellee was working, and, in his desire to

further the work, took up the timber bar, and, without stopping to consider consequences, and without warning appellee, pried down a timber, breaking off the footing upon which appellee was standing. The order given was not as broad as the whole service, and the principle enunciated in *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689, 63 L. R. A. 460, is not applicable. It had relation to the doing of a detail of said work at a stated time and place and was accompanied with specific instructions directing the manner of doing same, and was such an order as is contemplated by the terms of said second subdivision of the act. *Clear Creek Stone Co.* v. *Carmichael* (1906), 37 Ind. App. 413. In the case cited the superintendent's negligence consisted in sending the employe to do a detailed part of his work in a place which was afterward made dangerous by the power man's acting in accordance with a signal from the superintendent, and hoisting said machine without giving the employe time to escape. In the case at bar the negligence consisted in the performance of the alleged negligent act by the superintendent himself.

If it were claimed that appellee was liable otherwise than under the statute, proposition (b) would be persuasive, but there is no question of vice-principalship involved. Conforming to an order from a person in appellant's service, to whose order it was his duty to conform, the further inquiry is whether such employe was injured as the result of negligence by such person, and upon that proposition, in the light of the facts, the verdict of the jury is conclusive.

In a case decided by the supreme court of Massachusetts, under a similar statute, an employe, in obedience to specific instructions, was attempting to move a heavily loaded truck, which in transit sank into the floor from which he and two associates were trying to lift it, when the superintendent appeared and

inquired of the employe, whom he had ordered to do the work: "What are you doing that for? That is not what I wanted at all, but as long as you have it on the truck take it along now." A further effort to move the truck failing, the superintendent took charge, after which it was moved about fifteen feet, when it again stuck. The superintendent then took a piece of board, and, using it as a lever, endeavored to lift one of the wheels out of the depression, which action caused the truck to lurch and its load to turn, striking the employe and injuring him. Upon these facts the court said: "It is strongly urged by the defendant that the act of the superintendent in raising the wheel was one of manual labor and not one of superintendence, and, as it contributed to the injury, there can be no recovery. But at the time he was actively engaged in forwarding the work, and the plaintiff and his fellow servants were under his immediate supervision. He was not engaged in working with the men in a common task of manual labor. * * * His use of the lever was not an independent act of work with his hands, but a part of the plan, or one of the conditions connected with his superintendence, and the moment of time taken for its performance cannot be singled out for the purpose of saying that he was at that instant a common laborer, although immediately before and after he was clothed with the authority of his superior position." *Meagher* v. *Crawford Laundry Mach. Co.* (1905), 187 Mass. 586, 73 N. E. 853. The negligent act which caused the injury was that of the person for whose negligence the statute renders appellant liable, its duty to appellee being to protect him therefrom.

Whether the act of Harman was, in view of all the circumstances, a negligent one was for the jury, there being evidence from which it might infer that he did not

3. act with the care which a reasonably prudent man would exercise under the same or similar circumstances.

In the argument relative to instructions given and refused the same propositions are urged as those

5. above considered, and the conclusion reached by the court relative to them is the same.

The damages assessed are not so large, in view of the evidence as to the injury suffered, as to indicate that the jury acted with prejudice,

6. partiality or corruption. *Wolf* v. *Trinkle* (1885), 103 Ind. 355.

Judgment affirmed.

Myers, C. J., Robinson, Comstock and Black, JJ., concur. Wiley, P. J., absent.