## RICHEY v. CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY.

[No. 21,419.    Filed November 28, 1911.]

1. MASTER AND SERVANT.—*Railroads.*—*Employers' Liability Act.*—*Servant Injured on Hand-car.*—*Complaint.*—A complaint alleging that the plaintiff was a servant of defendant railroad company, that defendant's section foreman ordered him to load the shovels, picks and other tools upon the hand-car and to get upon such car and to go to another point and to make certain repairs, that plaintiff obeyed, and that such foreman negligently set the brakes so that the plaintiff was thrown from the car, to his injury, does not state a cause of action under subdivisions two and four of section one of the employers' liability act (Acts 1893, p. 294, §8017 Burns 1908) providing that "every railroad * * * shall be liable * * * for personal injuries, * * * where such injuries resulted from the negligence of any person * * * to whose order" the injured employe "was bound to conform, and did conform, * * * or where such injury was caused by the negligence of any person, coemploye or fellow servant engaged in the same common service * * * acting in the place, and performing the duty of the corporation in that behalf, and the person so injured, obeying or conforming to the order of some superior at the time of such injury, having authority to direct." Morris, J., dissents.    pp. 546, 548, 552, 561.

2. MASTER AND SERVANT. — *Employers' Liability Act.* — *Common Law.*—The second clause of subdivision four of section one of the employers' liability act (Acts 1893 p. 294, §8017 Burns 1908, providing that railroad companies shall be liable for injuries caused by the negligence "of any person, coemploye or fellow servant engaged in the same common service * * * acting in the place and performing the duty of the corporation in that behalf," the person injured being engaged in obedience to an order from a superior with authority, raises a liability to one injured while conforming to a special order from a superior, though not to a general order under which the servant has discretion.    p. 547.

3. MASTER AND SERVANT.—*Vice-Principals.*—*Who Are.*—One delegated by the master to perform a masterial duty is a vice-principal; and the master is liable for his acts.    p. 550.

4. MASTER AND SERVANT.—*Employers' Liability Act.*—*Negligent Order.*—*Liability.*—A railroad company is liable to an employe negligently injured while in the performance of a special order

given by another servant of the company to whose order the injured servant was bound to conform. p. 551.

5. CONSTITUTIONAL LAW.—*Special Privileges.*—*Employers' Liability Act.*—*Corporations.*—An employers' liability act making corporations liable for acts for which individuals or partnerships are not liable is unconstitutional, constituting class legislation. p. 554.

6. CONSTITUTIONAL LAW.—*Employers' Liability Act.*—*Class Legislation.*—*Railroads.*—*Hazardous Employment.*—Section one of the employers' liability act of 1893 (Acts 1893 p. 294, §8017 Burns 1908) making "every railroad or other corporation" liable for the negligence of employes in certain cases, is unconstitutional except as to railroad employes injured in the actual operation of their trains. *Louisville, etc., R. Co.* v. *Melton,* 218 U. S. 36, partly disapproved. p. 555.

7. APPEAL.—*Affirmance.*—*Searching Record.*—The court will search the record to affirm a case, but it will not do so for the purpose of reversing it. p. 557.

8. APPEAL.—*Transfers.*—*Constitutional Questions.*—Jurisdiction of cases presenting constitutional questions already settled is in the Appellate Court, where, except for such question, the jurisdiction would be in such court. p. 560.

From Bartholomew Circuit Court; *Marshall Hacker,* Judge.

Action by Walter C. Richey against the Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for defendant, plaintiff appeals. Transferred from Appellate Court (see 47 Ind. App. 123) under §1429 Burns 1908, Acts 1893 p. 29, §3. *Affirmed.*

*Hord & Adams* and *Herbert C. Jones,* for appellant.
*Carter & Morrison,* for appellee.

MYERS, J.—This cause was transferred to the Supreme Court by the Appellate Court with its recommendations.

Appellant instituted an action for damages for personal injuries. Two paragraphs of complaint were filed, one of which was withdrawn, and a demurrer was sustained to the other, from which ruling plaintiff appeals.

The material allegations of the complaint on the subject of the negligence claimed are that on March 27, 1905, plain-

tiff was an employe in the service of defendant, doing common labor as a section-hand in repairing and maintaining the railroad tracks of the defendant, and doing other varied services on a section about three miles long, extending in a northwesterly direction from the town of Waldron to Wheeler creek, which section, with the hand-cars, tools, implements and the employes were under the control and supervision, and subject to the orders, of an employe of said defendant, known as a section foreman, and that at said time this plaintiff and other section-hands laboring for defendant were under the control of, and subject to, the orders of the section foreman, who was engaged in the same common service and was a coemploye and fellow servant with the plaintiff and the other employes on the section; that the section foreman, during all the time, in performing the service of the corporation, was then and there acting in the place of, and performing the duties of, the corporation in that behalf, as its duly authorized agent; that upon said day, and for a long time prior thereto, plaintiff was under the absolute control, and subject to the orders and direction of, the section foreman in performing his work and labor upon the section; that upon the day aforesaid, and a long time prior thereto, defendant owned a machine commonly called a hand-car, which was then, and for a long time before said time had been, under the exclusive control of the section foreman, and which was used by defendant, under the supervision and control of the section foreman, for the purpose of transporting the section foreman, and the section-hands under his control and subject to his order, along the line of said section, for the purposes of performing the duties of the corporation, and also for the purpose of carrying tools, implements, lifting-jacks, cross-ties, railroad iron, spikes, dirt, iron rails, gravel and other material, used in repairing and maintaining the road-bed of the corporation, and for performing other duties pertaining thereto; that the hand-car was a large and heavy

machine, with iron wheels, and was propelled by an appliance that was operated by hand by the employes of the company; that the car was also equipped with a brake for checking and stopping it; that upon said day, plaintiff and other employes of defendant were unloading cross-ties at the town of Waldron, when the section foreman gave this plaintiff, and other employes working on said section, a special order to desist from that work, and to load upon said hand-car their shovels, picks, lifting-jacks and other tools belonging to the defendant, and he specifically ordered plaintiff and the employes working upon said section (which order and direction he was authorized to give) to get upon the hand-car, and proceed with him to the west end of said section at Wheeler creek, to make repairs on defendant's road-bed, by surfacing it; that while proceeding under said order and direction of the foreman, who had charge of and management of the brakes, and the management of the car by virtue of the authority vested in him by the defendant to do so, and while traveling upon the hand-car, subject to the orders of the section foreman to perform the duties required of them, while said hand-car was running at the rate of twelve miles an hour on a down-grade over defendant's road, and while it was being propelled by this plaintiff and the other employes, under the order and direction of the section foreman who was then present upon the car, ordering and directing its movement, and who was the only person authorized to operate the brakes on the hand-car or who had any authority to direct the operating of the car, which was then heavily loaded with implements and tools, said section foreman carelessly and negligently, and with great force, without any notice to this plaintiff and the other employes on said car, suddenly applied the brakes to the car when there was no necessity therefor, at a point more than one mile from the destination, whereby the speed of the car was quickly, suddenly and violently reduced from twelve miles an hour to three miles an hour, by said section

foreman, who was a large and heavy man, negligently and carelessly throwing his entire weight upon the brakes, by reason of which negligent conduct said plaintiff was thrown forward off the car to the ground upon the railway bed, and was greatly injured; that at the time plaintiff was so injured he was obeying the orders and directions of the section foreman, who then and there had competent authority in that behalf from this defendant to order and direct him, and the section foreman at the time was his superior in authority upon the section, and the section foreman, this plaintiff and the other employes upon the section at the time were engaged in the same common service in said department of the defendant as fellow servants performing the duties and labors of the corporation, and at the time of receiving the injury, and during the negligent conduct of the section foreman, and at all said times, plaintiff exercised due care and diligence to prevent said injury, and during all said time he was free from fault or negligence contributing in any degree to his injury.

Upon these allegations appellant claims liability under subdivisions two and four of the employers' liability act (Acts 1893 p. 294 §8017 Burns 1908), on the ground

1. that the act enlarges the liability of the operators of railroads where injury results from the negligence of any person in their service to whose order the injured employe is bound to conform and does conform, or who is "at the time acting in the place of, and performing the duty of the corporation." He claims to recover by virtue of the order to change work and go upon the car, to which order he was bound to conform, and the negligent act of the section foreman, as the act of the principal. Appellee contends that the act of giving an order to change the work and to go upon the car was general, and less broad than the scope of the employment, the giving of which was not negligent, and that the injury did not arise proximately from that order, or in attempting to obey it, but from the act of

the foreman in suddenly stopping the hand-car, in the doing of which he was but a fellow servant within the common-law rule, and the statute. Reliance is placed by appellee on the cases of *Justice* v. *Pennsylvania Co.* (1892), 130 Ind. 321, and *Thacker* v. *Chicago, etc., R. Co.* (1902), 159 Ind. 82, 59 L. R. A. 792, upon the theory that the foreman and appellant in the matter of being transported with the tools to and from their work, were mere fellow servants. It was held in the case first cited, that at common law a section foreman in employing and discharging men is a vice-principal, but that in directing them, after their employment, he is a fellow servant. The case was determined prior to the enactment of the employers' liability act, which under some conditions enlarges the liability of railroads to those who are coemployes and fellow servants. It was held in the case of *Indianapolis Union R. Co.* v. *Houlihan* (1901), 157 Ind. 494, 54 L. R. A. 787, that the second clause of the fourth subdivision of the act only qualifies the liability expressed in such clause.

The second clause of subdivision four is a declaration of the common-law liability. *Thacker* v. *Chicago, etc., R. Co., supra.* Subdivision two of §8017, *supra*, raises a liability when injury arises from the negligence of one to whose order or direction the injured party was bound to conform and did conform.

2.

Do these subdivisions undertake to create a liability from obedience to an order only, or also from the negligent act of one whose position is such that others are bound, from the fact of his position, to obey, or conform to his orders, irrespective of the thing about which he is acting, or the manner in which, or the circumstances under which it is done, from which injury arises? That is, Does liability arise from the fact of direct conformity to an order only, or does the negligent act of the one occupying a position which commands obedience create liability where the act is done during the time of conforming to the order?

It has been held that an order must be special, as contradistinguished from a general order as broad as the scope of the service and the employment, but these cases will be found to present somewhat exceptional facts. *Indianapolis St. R. Co.* v. *Kane* (1907), 169 Ind. 25; *McElwaine-Richards Co.* v. *Wall* (1906), 166 Ind. 267; *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689, 63 L. R. A. 460; *Indiana Mfg. Co.* v. *Buskirk* (1904), 32 Ind. App. 414; *Grand Rapids, etc., R. Co.* v. *Pettit* (1901), 27 Ind. App. 120.

It has also been held that a special order may arise within the scope of the general employment, and that a general order is one under which the servant works at his discretion, without compulsion of an order. The order here to go upon the hand-car was less broad than the general scope of the employment, under the allegations of the complaint, and the injury arose in conforming to it. *McElwaine-Richards Co.* v. *Wall, supra; Southern Ind. R. Co.* v. *Harrell, supra; Indianapolis St. R. Co.* v. *Kane, supra.*

It has been intimated, if not decided, that an order need not be negligent in itself in order to authorize a recovery, if injury arises while complying with it, by an act of one authorized to give it. *Muncie Pulp Co.* v. *Davis* (1904), 162 Ind. 558, 561; *Indianapolis Gas Co.* v. *Shumack* (1899), 23 Ind. App. 87.

The complaint is not grounded alone upon the theory that the order was special and negligent, but upon the fact of obedience to the direction of the foreman as to going 1. upon the hand-car, and the direct negligence of the latter in precipitating his weight upon the brake, and suddenly stopping the car without notice or warning to appellant. If there arises a cause of action from obedience to an order to do a thing by one authorized to give it, from the doing of which an injury arises, does it follow that the negligent doing of the thing by the person authorized to give the order to do it gives rise to a cause of action from

that fact, or does the statute mean still to maintain the relation of fellow servants, when the superior is at the time engaged in the same or common service, and impose liability only when the superior servant is discharging the duty of the master, and not that of a fellow servant?

It is alleged that the foreman had exclusive control over the hand-car, and was the only person who had authority to control its movements and operation. The case is not like that of *Thacker* v. *Chicago, etc., R. Co., supra,* as to the first, second and third paragraphs of complaint, which were held bad because the order given by the foreman to stop the car was not negligent in itself, but executed by another in a negligent manner, while the fourth paragraph of complaint was held good because it alleged the giving of the order by the foreman to stop the car suddenly. Here the allegation is that the foreman himself did the negligent act. The case falls squarely within the rule declared in the case of *Thacker* v. *Chicago, etc., R. Co., supra,* as to the fourth paragraph of complaint, provided the section foreman was acting for the master in the movement of the car in the discharge of the master's duty, or a duty imposed upon the superior. The force to be imputed to the statute does not arise merely from the relation of fellow servants, for the act recognizes them as such, but attaches to the act of one who, for the time being, is acting for the master by virtue of his authority over his fellow servants in discharging the duties of the master. The condition of superior rank is not alone sufficient, it must be such that the servant is at the time acting in the place of, or discharging the duty of, the master, or one to whose order others must conform. *Cleveland, etc., R. Co.* v. *Foland* (1910), 174 Ind. 411.

So that the question is narrowed to the proposition whether the act of the section foreman in suddenly stopping the hand-car was done in the performance of an order to which appellee was bound to conform or whether he was at the time acting for, or discharging the duty of, the master. The

statute has not changed the fellow-servant rule, except as
the fellow servant falls within some of the classifications out
of which liability arises. The master ordinarily is not liable
for the manner of handling appliances furnished, nor for
the changing perils of the general employment, nor for a
fellow servant's negligence in the detail of the work unless
the servant brings himself within the exception. *Bedford
Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 14 L. R. A.
(N. S.) 418.

The statute declares the common law, and, under some
conditions, does not increase the class of those who are at
common law vice-principals, while in others it does increase
the class whose acts give rise to liability. *Fort Wayne Iron,
etc., Co.* v. *Parsell* (1907), 168 Ind. 223; *Dill* v. *Marmon*
(1905), 164 Ind. 507, 69 L. R. A. 163; *Thacker* v. *Chicago,
etc., R. Co., supra; Island Coal Co.* v. *Swaggerty* (1903), 159
Ind. 664.

In the foregoing case this court quotes with approval from
1 Shearman & Redfield, Negligence (5th ed.) §233, where it
is said: "The test to be applied in each case, under
this principle, is to inquire: What would have been
the duty of the master had he been personally pres-
ent? To whom did he delegate that duty, he being ab-
sent? That delegate, whether he be high or low, should be
deemed, with respect to that duty, a vice-principal. Fore-
most among the powers of a master, as already pointed out,
is the power of giving orders. Foremost among his duties is
that of general superintendence. He is equally responsible,
where he deputes to another the duty of giving orders which
he ought to give himself, if present; and if he deputes his
power and duty of superintendence, he is responsible for the
failure of his deputy to properly superintend. * * * The
master's responsibility for the acts of his vice-principal is
to be determined, not merely by the character of the act
which the latter performs, but also by the character of that
which he fails to perform. If, therefore, a vice-principal,

invested with the power and duty of superintendence, negligently permits any act to be done which it would be the duty of the master, if present, to prevent, the master is responsible to a servant injured thereby, simply because of the failure of his superintending vice-principal to prevent its being done. And the master is none the less liable, if the negligent act is done by the vice-principal himself.'' This is the direct rule in the cases of *Indianapolis Gas Co.* v. *Shumack, supra,* and in *Thacker* v. *Chicago, etc., R. Co., supra,* though in neither case was the question raised or decided as to the applicability of the employers' liability act, both parties in each case treating the question as if it did apply, while here the question of its application is directly presented.

In going upon the hand-car, and in being carried upon it, appellant was acting in obedience to an order of one who had authority to direct him. It was not necessary 4. that the injury should arise directly from obedience to that order, but it is sufficient if it arises while complying with it. In the case of *Louisville, etc., R. Co.* v. *Wagner* (1909), 153 Ind. 420, it was held that it was not necessary that the order or direction be negligent, but it is sufficient if the employe was bound to conform, and was conforming at the time of the injury, to the order or direction of the person whose negligence caused the injury. In that case it was said: ''The order to loose the truck was the proximate cause of plaintiff's injury. And it was both directing the plaintiff into a dangerous situation, that he was bound to enter, and then ordering the truck turned loose upon him without warning that constitute the actionable negligence.'' In the case of *Thacker* v. *Chicago, etc., R. Co., supra,* the section men were obeying a general order, when the foreman gave the negligent special order, which another obeyed, and which caused the injury to Thacker. Here appellant acted upon an order to go upon the car, and while being carried upon it, in conformity to the order, and in its continuity of execution, he was injured by the direct negli-

gence of the foreman. There was an intimate connection between appellant's conforming to the order in being upon the car, and the action of the foreman which caused the injury. In other words, the order to go upon the car was a proper and continuing one, and was not negligent. The injury arose subsequently in conforming to that order, and under the English cases, construing the British act upon which our own is modeled, a liability arises. *Wild* v. *Waygood*, [1892] 1 Q. B. 783; *Millward* v. *Midland R. Co.* (1884), 14 Q. B. D. 68. These decisions were followed in the cases of *Louisville, etc., R. Co.* v. *Wagner, supra,* and *Chicago, etc., R. Co.* v. *Thacker, supra.* See Dresser, Employers' Liability p. 304.

The court is of the opinion that this complaint, if otherwise sufficient, is good under the rule announced as to the fourth paragraph of complaint in the case of *Thacker* v. *Chicago, etc., R. Co., supra,* and the rule laid down in the case of *Indianapolis Gas Co.* v. *Shumack, supra,* and the doctrine in the cases of *Island Coal Co.* v. *Swaggerly, supra,* and *Louisville, etc., R. Co.* v. *Wagner, supra,* upon the theory that the act of the section foreman in doing a negligent thing himself, from which the injury arose, was as potent as his giving an order to do it; that it necessarily involved the same mental process to determine to do what he did, as if he had given an order to another to do it, as he did it; and that the master's duty, to exercise reasonable care to make and keep the appliance reasonably safe, was imposed upon the section foreman, and that this duty was extended to the operation of the hand-car, so far as he himself was concerned in operating it, as applied to the question of keeping it safe. For it would be the refinement of reasoning to say that he by giving the order to another would create a liability, but if he did the thing himself, it would not. *Thacker* v. *Chicago, etc., R. Co., supra; Toledo, etc., R. Co.* v. *Pavey* (1906), 39 Ind. App. 284; *Frandsen* v. *Chicago, etc., R. Co.* (1873), 36 Iowa 372.

A more serious question arises over the proposition as to whether under the employers' liability act it can be said, as a matter of law, that appellant's injury arose from the operation of a railroad train. If the case under the facts pleaded can be said to fall within the statute, it must be because the running of the hand-car was the "operation" of a railroad, within the restricted meaning of the operation of trains, which the court has been constrained to give the act, in order to uphold it in any respect, and that is the real question here. The statutes of other states, and the construction given to them, do not materially aid us, owing to the difference in the statutes, and the different constitutional provisions. In Iowa, the language of the act is, "connected with the use and operation of any railway on or about which they shall be employed." Iowa Code 1907 §2071. See, also, *Cahill* v. *Illinois Cent. R. Co.* (1910), 148 Iowa 241, 125 N. W. 331, 28 L. R. A. (N. S.) 1121; *Johnson* v. *Great Northern R. Co.* (1908), 104 Minn. 444, 116 N. W. 936, 18 L. R. A. (N. S.) 477 and valuable notes; *Hanson* v. *Northern Pac. R. Co.* (1909), 108 Minn. 94, 121 N. W. 607, 22 L. R. A. (N. S.) 969 and note. In Kansas, the language is, "any employe of said company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employes." Kansas Gen. Stat. 1909 §6999. In Minnesota, "by reason of the negligence of any other servant thereof." The Texas statute restricts liability to those "engaged in the work of operating cars, locomotives or trains." South Carolina extends the liability to employes the same as to those who are not employes, and to injuries resulting "from the negligence of a superior agent or officer, or of a person having a right to control or direct the services of a party injured, and also when the injury results from the negligence of a fellow servant employed in another department of labor from that of the party injured, or of a fellow servant on another train of cars, or

one injured in a different piece of work.'' By the statute of Arkansas, vice-principals are defined as well as those who are fellow servants. The Mississippi constitution is similar to the South Carolina act, and the code follows it. Const. of Miss. Art. 7, §193.

The language of the Missouri statute is, ''while engaged in the work of operating such railroad by reason of the negligence of any other agent or servant thereof,'' and defines vice-principals and fellow servants. Mo. Annotated Stat. 1906 §2873.

The Montana act provides that the liability for injury to a servant ''acting under the orders of his superior, shall be the same * * * as if such servant or employe were a passenger. Montana Code §905.

The Ohio code declares who are superiors and who are fellow servants, and provides for liability in addition to the liability then existing, when arising from the negligence of the superior. 87 Ohio Laws p. 149, Bates, Annot. Stat. (2d ed.) §3365 - 22.

It may be conceded that the hazard of the service upon which liability is predicated is extended in most jurisdictions farther than we can extend it under our Constitution. In order to give effect, so far as could possibly be done, to the employers' liability act, so as to escape the constitutional objection of special or class legislation, the court has been compelled to draw the line of separation at the character of the employment and not the character of the employer, and as applied to railroads, at the employment which is hazardous in its discharge, as affected by the operation of trains; for, as pointed out in the case of *Cleveland, etc., R. Co.* v. *Foland, supra,* if a railroad employe in constructing a bridge is injured, and the railway is liable, and an employe of a private person doing the same work is injured, and there is no liability, the statute would clearly fall within the constitutional prohibition. *Indianapolis Traction, etc., Co.* v. *Kinney* (1909), 171 Ind.

612, 23 L. R. A. (N. S.) 711; *Bedford Quarries Co.* v. *Bough, supra; Town of Longview* v. *City of Crawfordsville* (1905), 164 Ind. 117, 68 L. R. A. 622; *Sellers* v. *Hayes* (1904), 163 Ind. 422; *McKinster* v. *Sager* (1904), 163 Ind. 671, 68 L. R. A. 273, 106 Am. St. 268; *School City of Rushville* v. *Hayes* (1904), 162 Ind. 193; *Street* v. *Varney Electrical Sup. Co.* (1903), 160 Ind. 338, 61 L. R. A. 154, 98 Am. St. 325; *Dixon* v. *Poe* (1902), 159 Ind. 492, 60 L. R. A. 308, 95 Am. St. 309; *Connolly* v. *Union Sewer Pipe Co.* (1902), 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679; *Cotting* v. *Kansas City Stock Yards Co.* (1901), 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92; *Johnson* v. *St. Paul, etc., R. Co.* (1890), 43 Minn. 222, 45 N. W. 156, 8 L. R. A. 419; *Lavallee* v. *St. Paul, etc., R. Co.* (1889), 40 Minn. 249, 41 N. W. 974; *Johnson* v. *Goodyear Min. Co.* (1899), 127 Cal. 4, 59 Pac. 304, 78 Am. St. 17, 47 L. R. A. 338; *Slocum* v. *Bear Valley Irrigation Co.* (1898), 122 Cal. 555, 55 Pac. 403, 68 Am. St. 68; *Ballard* v. *Mississippi Cotton Oil Co.* (1902), 81 Miss. 507, 34 South. 533, 95 Am. St. 476, 62 L. R. A. 407.

If we should hold that the liability depends upon the employer and not upon the character of the employment, we would then be forced to hold that a mechanic in a railway shop repairing a locomotive or car, wholly disconnected from any danger different from that of a mechanic employed by a private person, corporation or person other than those operating railroads, would have a cause of action against a railway company, while an employe of a private person, or corporation doing the same work, and suffering the same injury, from a like cause, would not have a cause of action. In its attempt to uphold the law so far as it could be done, by basing it upon the character of the employment, and not of the employer, so as to avoid the constitutional objection, this court in the case of *Pittsburgh, etc., R. Co.* v. *Montgomery* (1898), 152 Ind. 1, 69 L. R. A. 875, 71 Am. St. 300, followed the rule in Iowa, Minnesota and Kansas of classification by the char-

acter of service, and upheld the act as to railroads, by putting them in a class by themselves, on account of the hazards in operating trains. This was followed in the case of *Indianapolis, etc., R. Co.* v. *Houlihan, supra.* This classification of railroads by themselves was approved by the Supreme Court of the United States in the case of *Tullis* v. *Lake Erie, etc., R. Co.* (1899), 175 U. S. 348, 20 Sup. Ct. 136, 44 L. Ed. 192, following the rule declared by the supreme courts of Iowa and Kansas, as a classification by employment, and not by the employer. *Deppe* v. *Chicago, etc., R. Co.* (1872), 36 Iowa 52; *McAunich* v. *Mississippi, etc., R. Co.* (1866), 20 Iowa 338; *Missouri Pac. R. Co.* v. *Haley* (1881), 25 Kan. 35, 53.

In the case of *Chicago, etc., R. Co.* v. *Pontius* (1895), 157 U. S. 209, 15 Sup. Ct. 585, 39 L. Ed. 675, the Supreme Court of the United States in construing a statute similar to that of Iowa, puts the decision upon the same ground as the case of *McAunich* v. *Mississippi, etc., R. Co., supra.*

A classification of railroads has been upheld on the same grounds in Minnesota. *Lavallee* v. *St. Paul, etc., R. Co., supra,* and *Johnson* v. *St. Paul, etc., R. Co., supra.*

A Mississippi statute was held invalid because of imposition of liabilities upon all corporations, irrespective of the nature of their business, which were not imposed on natural persons. *Ballard* v. *Mississippi Cotton Oil Co., supra.*

In *Bedford Quarries Co.* v. *Bough, supra,* the court was again forced, in order to sustain any part of the law, to apply the rule of distinction as to the character of the employment, and to hold that the act was invalid except as to corporations or persons operating railroads, because it imposed obligations upon them that were not imposed on private persons or copartnerships in the same business and under the same circumstances and conditions.

Coming to the case of *Indianapolis St. R. Co.* v. *Kane* (1907), 169 Ind. 25, as was pointed out in the case of *Cleveland, etc., R. Co.* v. *Foland, supra,* on petition for re-

hearing, the question was not raised as to whether a bridge carpenter came within the provisions of the act, both parties treating it as if he did, and the court adopted the theory of the parties in that case, but the question was squarely presented in *Indianapolis Traction, etc., Co.* v. *Kinney, supra.* Besides, the judgment in the case of *Indianapolis, St. R. Co.* v. *Kane, supra,* was affirmed, and the rule is that

7. while the court will search the record to affirm a case, it will not do so to reverse it. The rule is too broadly stated in the case of *Indianapolis Traction, etc., Co.* v. *Kinney, supra,* and the case of *Cleveland, etc., R. Co.* v. *Foland, supra,* following it, if it is understood as limiting liability to those engaged in train service, but we do not so understand those cases, or so intend to hold or limit it, but that it applies to the hazards of the operation of railroad engines and trains. Bearing in mind that the ground for the classification is the character of the employment from which the hazard arises, it may be that in a specific case, a workman upon the tracks is subject to the hazards peculiar to the running of trains themselves, from collision, derailment, falling or projecting materials, or from other causes where employment on or about the track or on or about bridges, is affected by their operation, or in movements on the track, and affected by their operation in the necessary work upon it. At least it cannot be said, as a matter of law, that there is no hazard from the operation of trains, in working upon the track, or where operation of trains produces hazard, nor even that it is a less hazard than direct operation of trains.

To escape the constitutional objection as herein pointed out, we think the general doctrine stated in the cases of *Indianapolis Traction, etc., Co.* v. *Kinney, supra,* and *Cleveland, etc., R. Co.* v. *Foland, supra,* must be adhered to, and that each specific case must be governed by the question whether the service in which the employe is at the time engaged is such as subjects him to danger and injury from the operating of trains, whether actually engaged as an op-

erative on a train or not. *Mobile, etc., R. Co.* v. *Turnipseed* (1910), 219 U. S. 35, 31 Sup. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226.

This brings us to the consideration of the case of *Louisville, etc., R. Co.* v. *Melton* (1910), 218 U. S. 36, 30 Sup. Ct. 676, 54 L. Ed. 921. In the case of *Tullis* v. *Lake Erie, etc., R. Co., supra,* the Supreme Court of the United States upheld the constitutionality of the employers' liability act of this State, upon the ground that the construction put upon it by this court, as applying to the hazards connected with the operating of railways, was a reasonable classification, and held that it did not offend against the equal protection clause of the federal Constitution, and the construction of our own Constitution, and the acts arising under it, not presenting a federal question, are not the subject of review by that court. In the case of *Louisville, etc., R. Co.* v. *Melton, supra,* the court uses language that though properly involved in the federal question, as to the equal protection and due process of law clauses of the 14th amendment, was not sufficiently guarded, in view of the rule in the case of *Tullis* v. *Lake Erie, etc., R. Co., supra,* and of the construction by this court of the act in its relation to our own Constitution. An examination of the case discloses that the sole question before the court was as to the constitutionality of the act as applied to the 14th amendment to the federal Constitution, and that this is so, appears not only from the opinion itself, but from views expressed in the case of *Mobile, etc., R. Co.* v. *Turnipseed, supra.* Incidentally, it will be noticed that while the question of the full faith and credit clause of the federal Constitution was sought to be invoked in that case, as binding upon the courts of Kentucky, by the construction placed upon our statute, the court expressly declines to consider the question, because it was in nowise presented to the Kentucky court of appeals, and it follows that it was not determined in that case, and the only question conferring jurisdiction upon the Supreme

Court was the question involving the 14th amendment, which, as we understand it, was the only question before the court, in the discussion of which the court refers to the construction put upon the statute by this court as too restricted. Upon the theory that no federal question was involved in the construction of the statute by this court, that court dismissed, for want of jurisdiction, the appeals from the decisions of this court in the cases of *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438, *Pittsburgh, etc., R. Co.* v. *Collins* (1907), 168 Ind. 467, and *Pittsburgh, etc., R. Co.* v. *Ross* (1907), 169 Ind. 3, in each of which the question under our Constitution was directly involved. See *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1908), 212 U. S. 560, 29 Sup. Ct. 688, 53 L. Ed. 652.

If, as seems to be the case, the Supreme Court in the case of *Louisville, etc., R. Co.* v. *Melton, supra,* regards the construction by this court as too restricted, with respect to the character of employes, as restricted to those in the train service, we agree with it, but we do not so understand the rule. We understand and hold that it should be limited to those who incur the hazard of, and injury by and from, the operating of trains, but we cannot go farther without offending the prohibition of our own Constitution against special and class legislation. To adopt the broad construction apparently given in the case of *Louisville, etc., R. Co.* v. *Melton* (1907), 127 Ky. 276, 105 S. W. 366, 110 S. W. 233, 112 S. W. 618, and followed on appeal to the Supreme Court of the United States, could but lead to the entire overthrow of the act, but it seems to us that there is a line of possible harmony in the cases, on principle, though it could not harmonize our views with the rule adopted by the court of appeals of Kentucky in the case just cited, as applying to a bridge carpenter, whose injury was nowise caused by or connected with the hazard of operating trains, or different from that in any other business of a like character. The distinction lies, not from including employes in

a class—owing to the impracticability, if not the impossibility, of enacting a statute that would in and of itself apply to every condition or character of modern employments it may be sought to apply it to—but in the application of the statute in a particular case, irrespective of the general classification, to those whose employment for the time being exposes them to the hazards of, and injury from, the operating of trains.

We are asked by the Appellate Court to overrule *Pittsburgh, etc., R. Co.* v. *Rogers* (1907), 168 Ind. 483, upon the ground that when a constitutional question is presented in that court it has but one duty to perform, and that is to transfer it to this court, and as this court must pass upon the point whether a constitutional question is involved, it ought to assume jurisdiction of the case for all purposes. There would seem to be some ground for this claim, stated in the abstract, but the difficulty lies in the fact that notwithstanding a constitutional question presented upon the record has been definitely and specifically settled, it would be possible to devest the jurisdiction of that court, by the simple device of putting a constitutional question in the record, which can be done in a very great number of cases, however devoid of merit, and evade the very object of the creation of the court, by curtailing its jurisdiction, in that way, so that it seems to us the better and safer rule is the one announced in the case of *Pittsburgh, etc., R. Co.* v. *Rogers, supra,* and cases following it. That is the well-established rule in the Supreme Court of the United States, as shown by those cases in which, under the guise of procuring decisions upon federal questions, it is sought to procure decisions upon purely state questions, whether by appeal, writ of error or *certiorari. Watkins* v. *American Nat. Bank* (1905), 199 U. S. 599, 26 Sup. Ct. 746, 50 L. Ed. 327; *Bonin* v. *Gulf Co.* (1905), 198 U. S. 115, 25 Sup. Ct. 608, 49 L. Ed. 970; *Empire, etc., Developing Co.* v. *Hanley* (1905), 198 U. S. 292, 25 Sup. Ct.

691, 49 L. Ed. 1056; *Warder* v. *Loomis* (1905), 197 U. S. 619, 25 Sup. Ct. 799, 49 L. Ed. 909; *Spencer* v. *Duplan Silk Co.* (1903), 191 U. S. 526, 24 Sup. Ct. 174, 48 L. Ed. 287; *Arbuckle* v. *Blackburn* (1903), 191 U. S. 405, 24 Sup. Ct. 148, 48 L. Ed. 239; *Northern Pac. R. Co.* v. *Amato* (1892), 144 U. S. 465, 12 Sup. Ct. 740, 36 L. Ed. 506.

The difficulty confronting us in this case, in view of the holding in the cases of *Thacker* v. *Chicago, etc., R. Co.* (1902), 159 Ind. 82, 59 L. R. A. 792, and *Toledo, etc., R. Co.* v. *Pavey* (1906), 39 Ind. App. 284, is that in none of those cases, as in the case of *Indianapolis, etc., R. Co.* v. *Kane* (1907), 169 Ind. 25, was the question raised as to liability under the employers' liability act. We are, however, in view of later cases, in which the question was directly raised, constrained to hold that appellant does not state a cause of action under the employers' liability act, the theory upon which his action is grounded, and that the judgment must be affirmed. It is so ordered.

Morris, J., dissents from so much of the opinion as holds that appellant's injury was not one arising from the hazards of operating a railroad train.